NOT RECOMMENDED FOR PUBLICATION

File Name: 06a0336n.06

Filed: May 11, 2006

No. 04-2396

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| LASALLE BANK, N.A, | ) | |
| | ) | |
|  Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| MICHELLE S. LEGACY, | ) | |
| MICHAEL JOUBRAN, | ) | OPINION |
| YVONNE WILLIAMS, | ) | |
| COURT STREET, INC. and | ) | |
| KEITH CALLAN, | ) | |
| | ) | |
|  Defendants-Appellees, | | |

_____

**Before: MOORE, SUTTON, Circuit Judges; and BUNNING, District Judge.**[*]

 **DAVID L. BUNNING, District Judge.** This is an appeal from the district court's dismissal of Plaintiff's complaint on the basis of res judicata. Plaintiff LaSalle Bank ("LaSalle") was the assignee of a mortgage on a parcel of property located in Flint, Michigan. Defendant Michelle Legacy ("Legacy") acquired the property at a tax sale, and subsequently obtained a state court judgment quieting title to the property in her. Two years later, LaSalle filed a complaint for foreclosure in federal district court, to recover on the outstanding mortgage. LaSalle argued that it was never served with notice of its right

_____

[*]The Honorable David L. Bunning, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

to redemption, which is required by Michigan statute, and thus retained its right of reconveyance.[2] Legacy moved to dismiss, pursuant to Federal Rule of Civil Procedure 12(c), on the ground that LaSalle's foreclosure action was barred by the prior state court judgment under the doctrine of res judicata.

The district court found Legacy's motion well-taken, and dismissed LaSalle's complaint on the basis of res judicata. LaSalle filed its notice of appeal on November 8, 2004. (J.A. at 33).

For the reasons that follow, we **AFFIRM** the district court's dismissal of LaSalle's claim.

## I.  FACTUAL BACKGROUND & PROCEDURAL HISTORY

On December 20, 1995, Keith Callahan executed a promissory note and a mortgage in favor of Centennial Mortgage Company in the amount of $112,000.00, for property located in Flint, Michigan.[3] (J.A. at 12, 15). Centennial assigned the mortgage to Plaintiff, LaSalle Bank, N.A., on January 3, 1996. (J.A. at 22). Callahan subsequently defaulted on the mortgage, as well as the property taxes. (J.A. at 9-10). A tax sale was held on May 4, 1999, where Defendant Michelle Legacy purchased the property and obtained a tax deed with regard to the 1996 taxes. (J.A. at 52). The property was not redeemed, and the State Treasurer conveyed the property to Legacy on May 25, 2000. (J.A. at 51).

---

[2]The terms "reconveyance" and "redemption" are used interchangeably in this Opinion.

[3]The address of the property is 6420 North Genesee Road, Flint, Michigan 48506. (J.A. at 12).

2

Before she was able to perfect her tax deed, Legacy was required to give notice of the right to redeem the property to six parties: Keith Callahan, Tim Hall, d/b/a Root Away, Centennial Mortgage Company, the Internal Revenue Service, the Michigan Employment Security Commission, Yvonne Williams, and LaSalle. She properly notified all the parties, except LaSalle.[4] (J.A. at 99, 100, 102-104, 106, 109-110, 113-14, 117-18).

On July 2, 2001, Legacy filed a quiet title action against LaSalle in Michigan state court in order to obtain marketable title. (J.A. at 51).[5] LaSalle did not answer or otherwise respond to the complaint.[6] Legacy then moved for default judgment. (J.A. at 53). The Circuit Court for the County of Genesee entered a judgment quieting title in Legacy on August 27, 2001. The judgment stated, "Plaintiff, Michelle S. Legacy, by virtue of a perfected tax deed, is the owner of the following described real estate in fee simple by a title perfect as against the Defendant LASALLE NATIONAL BANK, Trustee for AFC Mortgage Loan Asset Backed Certificate Series 1996-1." (J.A. at 56).

Legacy subsequently sold the property via warranty deed to Court Street, Inc. ("Court Street"), and Court Street, in turn, conveyed the property via warranty deed to Michael Joubran. (J.A. at 80-81).

---

[4]Legacy seems to dispute the allegation that it did not provide LaSalle with the requisite notice in its brief: "There is no record of oral or documentary evidence that Legacy did not give LaSalle Bank statutory notice of its right to redemption." (Br. Appellee Legacy at iv). However, the Court finds that the converse is also true.

[5]She had previously obtained a quiet title judgment against Callahan, Hall, and Centennial Mortgage. (J.A. at 90).

[6]According to the district court's opinion, "[o]n July 19, 2001, a representative of Plaintiff LaSalle, Heather Fellows, contacted Defendant Legacy's attorney by telephone stating that LaSalle had no knowledge or information about the property." (J.A. at 27).

3

On August 1, 2003, LaSalle filed a complaint for foreclosure in United States District Court for the Eastern District of Michigan. (J.A. at 8). Factually, LaSalle argued that Callahan owed $110,278.16 in mortgage payments, and $48,636.49 in interest. (J.A. at 9). Legally, LaSalle argued that Legacy failed to perfect her tax title because she did not provide it with the required notice of its right to redeem the property. LaSalle further asserted that the right to redemption continued until such notice was given, and that the subsequent warranty deeds to Court Street and Joubran were void. (J.A. at 10).[7]

Legacy moved to dismiss under Federal Rule of Civil Procedure 12(c), arguing that LaSalle's claim was barred under res judicata.[8] Court Street moved for summary judgment, arguing that the doctrines of res judicata and laches applied, and that it was not a proper party.[9] Finally, LaSalle moved for summary judgment, arguing that, due to Legacy's failure to comply with M.C.L. § 211.140, it retained its rights to reconveyance and foreclosure. (J.A. 82-97).

On September 27, 2004, the district court entered a Memorandum Opinion and Order granting Legacy's motion to dismiss and Court Street's motion for summary judgment; and denying LaSalle's motion for summary judgment. The court concluded that res judicata applied to preclude LaSalle's claim. (J.A. 24-31).

This appeal followed.

## II. ANALYSIS

---

[7]Procedurally, Joubran filed a cross claim against Court Street; Court Street filed a cross claim against Legacy; and Legacy filed a third-party complaint against First American Title Company. (*See* District Court docket report, J.A. at 3-4).

[8]Joubran concurred in this motion. (J.A. at 124).

[9]Joubran also concurred in this motion. (J.A. at 124).

4

### A. Standard of Review

"The applicability of res judicata to bar a subsequent suit is a question of law that this Court reviews de novo." *Morse v. First of Am. Bank-Michigan*, Nos. 212197, 215324, 2001 WL 921171, at *1 (Mich. Ct. App. Aug. 1, 2001). This court reviews a district court's dismissal of a claim and denial of summary judgment de novo. *Golden v. City of Columbus*, 404 F.3d 950, 954, 958 (6th Cir. 2005).

### B. Discussion

In this appeal, LaSalle's primary argument is that Legacy failed to strictly comply with the statutory notice requirements, and thus, its right to redemption has not been extinguished. Legacy, by contrast, argues that the judgment entered by the Genesee County Circuit Court has a preclusive effect on LaSalle's present claim.

Michigan Compiled Laws § 211.72 provides, in pertinent part, that "tax deeds convey an absolute title to land sold, and constitute conclusive evidence of title ...." *See Equivest Ltd. Partnership v. Foster*, 656 N.W.2d 369, 371 (Mich. Ct. App. 2002). The statute authorizes a person holding a state tax deed to bring an action to quiet title against all parties who have a recorded interest in the property. *Id.* However, under M.C.L. § 211.141, interested parties are afforded a redemption period that lasts for six months after the tax deed holder complies with the notice requirements of M.C.L. § 211.140. *Id.* Subsection (1) requires that notice be given to the following individuals/entities:

(a) The last grantee or grantees in the regular chain of title of the property, or of an interest in the property, according to the records of the county register of deeds.
(b) The person or persons in actual open possession of the land.
(c) The grantee or grantees under the tax deed issued by the state treasurer for the latest year's taxes according to the records of the county register of deeds.

5

(d) The mortgagee or mortgagees named in all undischarged recorded mortgages, or assignees of record.
(e) The holder of record of all undischarged recorded liens.

M.C.L. § 211.140(1) (1999).  The statute also prescribes the content and form of the notice. *Id.* § 211.140(2).  If proper statutory notice is not served, the six-month redemption period never begins to run, and the right to redemption continues to exist.  *Equivest*, 656 N.W.2d at 371 *citing Ottaco, Inc. v. Kalport Dev. Co., Inc.*, 607 N.W.2d 403 (Mich. Ct. App. 1999).

Strict compliance with the notice requirement of M.C.L. § 211.140 is required because the effect of the proceedings under the tax law is to divest the true owners of the title to their property.  *Andre v. Fink,* 447 N.W.2d 808 (Mich. Ct. App. 1989).  To that end, Michigan courts closely scrutinize and strictly construe tax title proceedings, holding that unless notice to redeem is served within the statutory period, a purchaser cannot assert title under a tax deed.[10]

In this case, LaSalle maintains that Legacy failed to properly serve it with notice of its right to redemption, in violation of the statute.  In support, LaSalle relies on *Equivest Ltd. Partnership v. Foster*, 656 N.W.2d 369 (Mich. Ct. App. 2002), which it claims is factually analogous.  (Br. Appellant at 16-19).

---

[10] *Adair v. Bonninghausen*, 9 N.W.2d 35, 37 (Mich. 1943) (internal citation omitted); *United States v. Varani*, 780 F.2d 1296, 1302 (6th Cir. 1986); *Burkhardt v. Bailey*, 680 N.W.2d 453, 460 (Mich. Ct. App. 2004) ("Even actual notice to Bond was insufficient to commence the running of the six-month period with regard to Bond because strict compliance with the statutory notice is required."); *Detroit Tax Lien Co. v. Paul*, No. 29905, 2003 WL 21921179, at *3 (Mich. Ct. App. Aug. 12, 2003) (holding that plaintiff's publication of notice prior to giving it to the sheriff's department rendered the notice insufficient according to a strict reading of the statute); *Equivest Ltd. P'ship v. Foster*, 656 N.W.2d 369, 372 (Mich. Ct. App. 2002) (finding the notice insufficient); *Stein v. Hemminger*, 419 N.W.2d 50, 53 (Mich. Ct. App. 1988) ("[T]he Supreme Court may very well wish to consider whether the policy reasons for a strict construction of the statute still exist.").

In *Equivest*, the property owner defaulted on her taxes, a tax sale was held, and the defendants received tax deeds from the State of Michigan with regard to the 1991 and 1992 taxes. *Equivest*, 656 N.W.2d at 370. The plaintiff's predecessor in interest, Equifunding, Inc., subsequently obtained a tax deed with regard to the 1993 taxes, and sought to quiet title to the property. *Id.* Equifunding attempted to serve the defendants with notice at their residence, to no avail. *Id.* After receiving a letter from the local sheriff's office indicating that it attempted service nine times, but the defendants refused to answer their door, Equifunding resorted to publishing notice in the county newspaper. *Id.* In the interim, Equifunding conveyed its interest in the property to the plaintiff, Equivest Limited Partnership. *Id.*

When the defendants failed to respond to the published notice, Equivest filed a complaint to quiet title and a request for a writ of assistance to take possession. *Equivest*, 656 N.W.2d at 370. The defendants answered and asserted an affirmative defense, claiming that they were not properly notified of their right to redemption under M.C.L. § 211.40. *Id.* The trial court disagreed, noting that the letter from the sheriff's office was sufficient to constitute a return of service. *Id.* The court awarded summary judgment in Equivest's favor. *Id.*

On appeal, the defendants argued that: 1) the sheriff was required to file an affidavit or return of service, indicating his failure to ascertain their whereabouts, and 2) Equivest did not strictly comply with the notice provisions of M.C.L. § 211.140.[11] *Id.* Based upon

---

[11]It was undisputed that the defendants resided in Wayne County, and the property at issue was located in Oakland County. *Equivest*, 656 N.W.2d at 372, n.2. Notice was published in an Oakland County newspaper. *Id.* at 372, n.3. On appeal, the court concluded that M.C.L. § 211.140(5), which permitted notice by publication, did not apply because the whereabouts of the

these deficiencies, the defendants claimed that the six-month redemption period never began to run. *Id.* at 370-71.

Relying on cases adopting a literal reading of M.C.L. § 211.140, the Michigan Court of Appeals held that Equivest's notice attempts were insufficient, and did not serve to commence the six-month redemption period. *Equivest*, 656 N.W.2d at 374. More specifically, the court concluded that "[t]he statute simply does not allow for publication notice in the county where the property is located in response to frustrated attempts at personal service upon residents of another county." *Id.* The court also extended an invitation to the Legislature to revisit the provisions of M.C.L. § 211.140 in order to provide alternatives for situations where a party whose whereabouts are known obstinately refuses service. *Id.*

The Court finds *Equivest's* holding regarding strict statutory compliance instructive. Nevertheless, the unique procedural history of the instant case dictates a different result.

In this case, LaSalle raised the lack of statutory notice not in a quiet title action as in *Equivest*, but in a federal foreclosure proceeding commenced two years after the tax sale purchaser sought and obtained a judgment quieting title to the property in her. LaSalle argues that it was under no obligation to respond to Legacy's quiet title action, and that its failure to do so had no effect on its right of reconveyance. (Br. Appellant at 14). As the following discussion demonstrates, LaSalle's attempt to divorce the issue of statutory notice from the effect of the state court judgment quieting title in Legacy is unavailing.

---

defendants were known. The specific question presented, therefore, was whether notice by publication was sufficient where the sheriff's office in the county where the defendants resided was unable to serve them because they deliberately evaded service.

Title 211, section 72 of the Michigan Compiled Laws describes the process and effect of a quiet title action with regard to a tax deed:

> A person holding a state tax deed of lands executed for nonpayment of taxes may commence an action in the circuit court of the county where the lands lie to quiet his or her title to the land without taking possession of the lands and all parties who have, claim to have, or appear of record in the register's office in the county where the lands are situated to have, any interest in the land or who may be in possession of the land may be made defendants in the action; and no outstanding unrecorded deed, mortgage, or claim shall be of any effect as against the title or right of the plaintiff as fixed and declared by the order made in the case.

M.C.L. § 211.72 (1999).

The statute also states:

> The tax deeds convey an absolute title to the land sold, and constitute conclusive evidence of title, in fee, in the grantee, subject, however, to all taxes assessed and levied on the land subsequent to the taxes for which the land was bid off.

*Id.*

A plain reading of section 72 reveals that the state court's determination that Legacy is the record owner of the property precludes LaSalle, or any other party, from thereafter asserting a competing or superior interest in the property. In this case, Legacy's complaint to quiet title expressly indicated that it was brought pursuant to section 72. LaSalle's argument that it was unaware of the implications of failing to defend the action is disingenuous at best. (J.A. at 49-50). Those implications are two-fold: 1) the August 27, 2001 state court judgment quieting title in Legacy dissolved LaSalle's interest in the property, and more importantly, 2) LaSalle was no longer a mortgagee entitled to statutory notice of its right to redemption under M.C.L. § 211.140 or the statutory right to redeem under § 211.141. *See Burkhardt*, 680 N.W.2d at 461 ("By its plain wording, § 141 only

9

extends the right to redeem to persons or entities having existing specified interests in the subject property.").

Furthermore, LaSalle has failed to cite, and the Court has been unable to locate, any cases where a party failed to defend a quiet title action, and subsequently sought to assert its right to redemption based upon the tax deed holder's alleged non-compliance with the statute.[12]

To the contrary, the Court's own research reveals that the sufficiency or insufficiency of notice provided by a tax sale purchaser under M.C.L. § 211.140 is generally, if not exclusively, raised in an action to quiet title. *See, e.g., Burkhardt*, 680 N.W.2d at 455 (noting that the dispute over notice of right to redemption arose out of a complaint to quiet title); *Equivest*, 656 N.W.2d at 370; *Detroit Tax Lien Co.*, 2003 WL 21921179, at *1; *Stein*, 419 N.W.2d at 51.

With these cases in mind, the Court concludes that whether Legacy properly notified LaSalle of its redemption right in accordance with M.C.L. § 211.140 is an issue that could have, and indeed should have, been raised in the prior quiet title action. LaSalle's failure in that regard is fatal to its present claim. *See Dart v. Dart*, 597 N.W.2d 82, 88 (Mich. 1999) (noting that Michigan courts broadly apply the doctrine of res judicata to bar claims that already have been, or in the exercise of reasonable diligence, could have been litigated).

### III. CONCLUSION

For the reasons stated herein, the decision of the district court is **AFFIRMED**.

---

[12]This was noted by the district court in its Memorandum Opinion and Order. (J.A. at 29).